### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOE LOUIE MENDOZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0591 (ESH) |
| | ) | |
| DRUG ENFORCEMENT ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Drug Enforcement Administration, through counsel, respectfully moves this Court for summary judgment on the grounds that there are no material facts in genuine dispute and defendant is entitled to judgment as a matter of law. Fed.R.Civ.P.56. In support of this motion, defendant respectfully submits the attached Memorandum of Points and Authorities, Statement of Material Facts not in Genuine Dispute, Declaration from William C. Little, Jr., Attorney, Office of Chief Counsel, Administrative Law Section, Drug Enforcement Administration and Exhibits. A proposed Order consistent with this motion is attached hereto.

Plaintiff will please take notice that any factual assertions contained in the accompanying declaration and other attachments in support of defendant's motion will be accepted by the Court as true unless plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in defendant's declaration and attachments. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), and Local Rule 7.1. As stated in Fed.R.Civ.P.56(e), which provides as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney

BRENDA C. WILLIAMS
Paralegal Specialist

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOE LOUIE MENDOZA,                       )
                                         )
                 Plaintiff,              )
                                         )
        v.                               )          Civil Action No. 06-0591 (ESH)
                                         )
DRUG ENFORCEMENT ADMINISTRATION,         )
                                         )
                 Defendant.              )
                                         )
                                         )
_____      )

## DEFENDANT'S STATEMENT OF MATERIAL FACTS AS
## TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to LCvR 7.1(h), Defendant Drug Enforcement Administration ("DEA"),

respectfully submits this Statement of Material Facts as to which there is no Genuine Dispute.

The attached Declaration of William C. Little, Jr., Attorney, Office of Chief Counsel,

Administrative Law Section, Drug Enforcement Administration Headquarters ("DEA") in

Washington, D.C., supports this statement.

1. By letter dated January 28, 2002, addressed to DEA's South Central Laboratory, the

plaintiff requested all DEA records concerning himself, specifically requesting: (a) all reports of

the chemical composition of any and all substance (sic) that were obtained by defendant through

any other agency under plaintiff's name for laboratory analysis; (b) investigation and/or

investigatory reports; (c) reports or evidentiary and/or scientific information findings; (d) final

and closing investigation reports; and, (e) any and/or all information, data, or reports not

otherwise exempt by statute.  Declaration of William C. Little, Jr., (Little Decl. ¶ 11, Exhibit A).

2. The plaintiff's letter dated January 28, 2002, was forwarded to the DEA Freedom of

Information Section by the Laboratory Director of the South Central Laboratory.  Memorandum

dated February 21, 2002.  Little Decl. ¶ 12, Exhibit B.

3.  By letter dated March 8, 2002, DEA returned the request letter to the plaintiff, informing him that it was necessary for him to submit a notarized signature, and providing him with a blank Certification of Identity.  Little Decl. ¶ 13, Exhibit C.

4.  The plaintiff returned the request with the signed Certification of Identity, along with a note informing DEA that information could be sent to him at 125 Las Villas, Brownsville, TX 78521.  Little Decl. ¶ 14, Exhibit D.

5.  By letter dated April 5, 2002, DEA informed the plaintiff that it had received his request and that it would handled in approximate order of receipt.  In the letter, DEA also informed the plaintiff that by filing his request he had agreed to pay fees up to $25.00, unless he sought a waiver of fees.  Little Decl. ¶ 15, Exhibit E.

6.  By letter dated April 22, 2002, DEA released to the plaintiff portions of six pages, numbered 73, 75-78 and 395.  Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and PA exemption (j)((2).  The remaining 389 pages were withheld in their entirety pursuant to FOIA Exemption (b)(7)(A).  Little Decl. ¶ 16, Exhibit F.

7.  By letter dated May 22, 2002, the plaintiff appealed DEA's response to the Department of Justice, Office of Information and Privacy ("OIP").  Little Decl. ¶ 17, Exhibit G.

8.  By letter dated July 19, 2002, OIP acknowledged the plaintiff's appeal, assigning it appeal number 02-2351, and informing him that it would be handled in approximate order of receipt.  Little Decl. ¶ 18 Exhibit H.

9.  By letter dated August 10, 2004, OIP informed the plaintiff that as a result of discussions between OIP and DEA, OIP had decided to release portions of two additional pages,

and otherwise it was affirming DEA's response, informing the plaintiff that DEA correctly

withheld information pursuant to FOIA exemptions (b)(2), (b)(7)(A), (b)(7)(C), (b)(7)(D), and

(b)(7)(F). Little Decl. ¶ 19, Exhibit I.

10. By letter dated September 7, 2004, DEA released portions of two pages, pages 122

and 159. Information was withheld pursuant to the exemptions cited in DEA's original

determination letter. Little Decl. ¶ 20, Exhibit J.

### DEA FOIA Request 03-0307-P

11. By undated letter notarized July 24, 2002, addressed to the DEA Fayetteville,

Arkansas, Residence Office, the plaintiff requested, as follows: (a) Affidavit for arrest warrant;

(b) Affidavit for search warrant; (c) Affidavit for the order to intercept wire communications over

mobile telephone 501-466-8684, and residential telephone 501-621-7029; (d) Arrest warrant; (e)

Search warrant; (f) the order that was signed by the Honorable Jimm Larry Hendren on June 19,

1998 authorizing the interception of wire communications over mobile phone 501-466-8684,

and residential telephone 501-621-7029; (g) the D.E.A. investigative report filed by special

Agent Sal Scalia on March 5, 1999, with reference to related case defendant, Thomas

Hornbecker; (h) the report Sergeant Yates completed in reference to his interview with Crystal

Mendoza on October 12, 1998 that was forwarded to this agency or to Special Agent Marty

Chitwood; (i) Any statement of the people that were arrested or interviewed in relation to

plaintiff or related offenses; (j) Investigation and/or investigatory reports; (k) Reports or

evidentiary and scientific information finding; (l) Transcripts of all recorded calls; and, (m) Final

and closing investigation reports.

3

The plaintiff also requested a fee waiver, stating that, if the fee waiver was denied, he agreed to pay the search and duplication fees while retaining his right to appeal the denial. Little Decl. ¶ 21, Exhibit K.

12. The plaintiff's letter dated July 24, 2002, was forwarded to the DEA Freedom of Information and Records Management Section by the Laboratory Director of the South Central Laboratory. DEA memorandum dated August 1, 2002. Little Decl. ¶ 22, Exhibit L.

13. By letter dated December 9, 2002, DEA informed the plaintiff that it had received his request and that it would be handled in approximate order of receipt. In the letter, DEA also informed the plaintiff that by filing his request, he had agreed to pay fees up to $25.00, unless he sought a waiver of fees. Little Decl. ¶ 23, Exhibit M.

14. By letter dated January 28, 2003, DEA denied the plaintiff's request for a fee waiver, informing him that in the event he submitted a promise to pay, processing of the request would commence upon receipt of his letter. Little Decl. ¶ 24, Exhibit N.

15. By letter addressed DEA dated February 7, 2003, the plaintiff stated that he would like to pay the fee so that his request could be processed. He stated that he still wished to appeal the fee waiver denial. Little Decl. ¶ 25, Exhibit O.

16. By letter dated March 21, 2003, the plaintiff appealed the DEA denial of his fee waiver to OIP. Little Decl. ¶ 26, Exhibit P.

17. By letter dated April 14, 2003, OIP acknowledged the plaintiff's appeal, assigning it appeal number 03-0307-P, and informing him that it would be handled in approximate order of receipt. Little Decl. ¶ 27, Exhibit Q.

18. By letter dated July 31, 2003, DEA addressed the plaintiff's request. DEA stated that

4

with regards to items 1 through 6, it did not house those types of records within its system of records, that those documents are located in the U.S. Attorney's Office, and that he should direct his request for those items to the appropriate U.S. Attorney's Office.  DEA stated that Items 7 through 13 were duplicative of his original request letter to DEA and his appeal letter to OIP. DEA stated that the letters and responsive material were maintained under his previous request file 02-0779-P which was under advisement with OIP, and that any additional information may be released upon adjudication of his appeal.  Little Decl. ¶ 28, Exhibit R.

19.  By letter dated August 10, 2004, OIP informed the plaintiff that since DEA had responded to his request by finding no records in response to certain subjects and determining that the remaining subjects were handled under a previous request, the fee issue as it related to request 03-0307-P was moot.  OIP stated that therefore it was closing the appeal file.  Little Decl. ¶ 29, Exhibit S.

20.  During the course of the litigation review in May 2006, it was noted that the plaintiff specifically requested: "all reports of the chemical composition of any and all substance (sic) that were obtained by your agency through any other agency under my name for laboratory analysis." There was no indication that a search for laboratory records had been previously conducted. Little Decl. ¶ 30.

21.  In June 2006, the South Central Laboratory was contacted and the laboratory forwarded copies of the requested laboratory records.  Little Decl. ¶ 31.

22.  By letter dated July 3, 2006, DEA released to the plaintiff two (2) pages in their entirety and portions of 21 pages.  Names of DEA laboratory personnel were withheld pursuant to FOIA exemptions (b)(7)(C).  Little Decl. ¶ 32, Exhibit T.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney

BRENDA C. WILLIAMS
Paralegal Specialist

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOE LOUIE MENDOZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0591 (ESH) |
| | ) | |
| DRUG ENFORCEMENT ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DRUG ENFORCEMENT ADMINISTRATION'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act of 1974 (PA), 5 U.S.C. § 552a, and pertains to the processing of plaintiff's FOIA/Privacy Act request to the Drug Enforcement Agency (DEA). The defendant has complied with the requirement of FOIA in responding to plaintiff's requests.

DEA is a component of the Department of Justice whose primary responsibility is the enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and chemicals, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* See 28 C.F.R. § 0.100. Declaration of William C. Little, Jr., (Little Decl. ¶ 60).

Plaintiff seeks production of agency records from DEA. Defendant DEA found responsive records. The Declaration of William C. Little, Jr., Attorney, Office of Chief Counsel, Administrative Law Section, Drug Enforcement Administration explains the scope of defendant's respective search for records and the appropriateness of the exemptions applied.

DEA released all non-exempt documents or portions thereof and made every effort to provide plaintiff with all reasonably segregated portions of releasable material. Defendant has complied with the requirements of FOIA, in responding to plaintiff's request. Accordingly, plaintiff's claims against defendant DEA should be summarily dismissed.

## I. STATEMENT OF FACTS

Defendant DEA incorporates herein as its Statement of Facts the Statement of Material Facts Not In Genuine Dispute attached hereto.

## II. ARGUMENT

### A.    Standard for Summary Judgment

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Washington Post Co. v. U.S. Dept. of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

An agency satisfies the summary judgment requirements in a FOIA or Privacy Act case by showing that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure. Weisberg v. U. S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, the defendant may rely on affidavits or declarations and other evidence by the agency

which show that the documents are exempt from disclosure.[1]  Summary judgment may be awarded to an agency in a FOIA or Privacy Act case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned' by evidence ... of bad faith on the part of the agency." Public Citizen, Inc. v. Dept. of State, 100 F.Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  Once the Court determines that the declarations are sufficient, it need not inquire further.  Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001).

Because defendant has released all non-exempt responsive documents on claims challenged by the plaintiff, his Complaint here should be summarily dismissed.

**B.    Defendant Has Submitted A Proper "Vaughn" Index**

In moving for summary judgment in a FOIA case, an agency must establish a proper basis for its withholding of responsive documents.  "In response to this special aspect of summary judgment in the FOIA context, agency regularly submit affidavits . . . in support of this motion for summary judgment against FOIA Plaintiff." Judicial Watch, Inc. v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).  This declaration or affidavit (singly or collectively) is often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974).  There is no set formula for a Vaughn index.  "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. F.C.C., 976 F.Supp. 23, 35 (D.D.C. 1997).  "The

---

[1]  For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381,. 1984, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." <u>Delaney, Midgail & Young, Chartered v. I.R.S.</u>, 826 F.2d 124, 128 (D.C.Cir. 1987). <u>See also</u> <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 349 (D.C.Cir. 1987); <u>Hinton v. Department of Justice</u>, 844 F.2d 126, 129 (3rd Cir. 1988).[2]

The <u>Vaughn</u> Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. <u>See</u> <u>Citizens Com'n on Human Rights v. Food and Drug Admin.</u>, 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology of Washington, D.C., Inc. v. Bell</u>, 603 F.2d 945, 949 (D.C.Cir. 1979).

Here, the DEA has submitted a supporting declaration and a separate <u>Vaughn</u> index in support of the exemptions taken. The declaration was prepared by an individual familiar with the handling of the direct request.

The declaration submitted in support of this motion meets the requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977, 94 S.Ct. 1564 (1974), and provides the Court with the requisite basis to grant defendant's motion.

---

[2] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." <u>Id</u>. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." <u>Information Acquisition Corp. v. Department of Justice</u>, 444 F.Supp. 458, 462 (D.D.C. 1978).

**C.    DEA Conducted A Reasonable Search for Records**

Defendant DEA performed a reasonable search in response to plaintiff's FOIA request.

In responding to a FOIA request an agency is under a duty to conduct no more than a reasonable

search for responsive records.  Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990);

Cleary, Gottlieb, Steen & Hamilton v. Department of Health and Human Services, 844 F.Supp.

770, 776 (D.D.C. 1993).

The search standards under the FOIA do not place upon the agency a requirement that it

prove that all responsive documents have been located.  Nation Magazine, Washington Bureau v.

U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that "the search

need only be reasonable; it does not have to exhaustive."  Miller v. U.S. Dept. of State, 779 F.2d

1378, 1383 (8th Cir. 1985) citing, National Cable Television Ass'n, Inc. v. F.C.C., 479 F.2d 183,

186 (D.C.Cir. 1973).  As a result, an agency under the FOIA is not required to search every

division or field office in response to a FOIA request when responsive documents are likely to be

located in one place.  Marks v. U.S. (Dept. of Justice), 578 F.2d 261, 263 (9th Cir. 1978).  The

agency is not obligated to perform an "open-ended, broad based, and ill-defined" search of every

division and office.  See, Marrera v. U.S. Dept. of Justice, 622 F.Supp. 51, 54 (D.D.C. 1985).

Even when a requested document indisputable exists or once existed, summary judgment

will not be defeated by an unsuccessful search for the document so long as the search was

diligent.  Nation Magazine, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once

existed does not mean that it now exists; nor does the fact that an agency created a document

necessarily imply that the agency has retained it.  Maynard v. C.I.A., 986 F.2d 547, (1st Cir.

1993).  Simply stated, the adequacy of the search is "dependent upon the circumstances of the

5

case." Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

**1.    DEA's Search For Responsive Documents Was Reasonable**

Plaintiff's June 11, 2005 letter, assigned DEA FOIA request No. 02-0779, was interpreted

as seeking criminal investigative and laboratory records that referenced or related to the plaintiff,

or referenced by the plaintiff's name. Similarly, plaintiff's July 24, 2002 request, was interpreted

as request for criminal investigative information and was considered duplicative of his request

dated June 11, 2005. Little Decl. ¶ 33.

The criminal investigative information sought by the plaintiff was reasonably likely to be

found in the DEA Investigative Reporting and Filing System (IRFS). Records regarding

laboratory analysis are reasonably likely to be contained records systems maintained by DEA

laboratories. Little Decl. ¶ 34. No other records system within DEA would reasonably contain

information responsive to the plaintiff's request. Little Decl. ¶ 35.

The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to

and the practical means by which DEA retrieves investigative reports and information from

IRFS. Little Decl. ¶ 36. As an index, NADDIS points to investigative files and particular DEA

Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain

information regarding a particular individual or subject of an investigation. Individuals are

indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

Little Decl. ¶ 37.

Records related to laboratory analysis performed by DEA laboratories are reasonably

likely to be found in the DEA Laboratory Case Files. Little Decl. ¶ 38, The records maintained

by DEA laboratories are the records that were generated as a result of forensic examination

which were forwarded by DEA personnel in the course of a criminal investigation, or materials forwarded by other law enforcement agencies for forensic analysis. Little Decl. ¶ 39.

The laboratory information consists of one DEA Form 86, Forensic Chemist Worksheet, and 12 pages of pertinent and analytical material; such as charts and graphs depicting infrared/spectrographic analyses. Laboratory case files include documents related to the analysis of drug and non-drug evidence, including evidence accountability and disposition records, chemist worksheets, ballistics reports, and related analytical documents. Little Decl. ¶ 40.

On April 5, 2002, a NADDIS query was conducted by SARO in response to the plaintiff's request dated January 28, 2002. The search was conducted by a SARO pre-processor, who used the plaintiff's name, Social Security Number, and date of birth. Little Decl. ¶ 41.

The DEA undertook an exhaustive search for records responsive to plaintiff's FOIA request. This search resulted in the location of responsive documents which were provided to plaintiff.

### D.    Description of Responsive Material

During the course of the administrative process and the litigation review, a total of 418 pages of materials responsive to the plaintiff's request were identified. Of the 418 responsive pages, 31 pages were released to the plaintiff. These 31 pages include, portions of 29 pages and two (2) pages in their entirety. The remaining 387 pages were withheld in their entirety. Information was withheld pursuant to FOIA exemptions (b)(2), (b)(3), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(F), and PA exemption (j)(2).  A Vaughn index detailing DEA's withholdings has been prepared. Little Decl. ¶ 43, Exhibit U.

In this case, the 418 pages of responsive information consist of:

7

(a) 155 DEA ROIs;

(b) 30 DEA Personal History Reports;

(c) 1 DEA Defendant Disposition Report;

(d) 4 DEA Report of Drug Property Collected, Purchased or Seized forms;

(e) 5 DEA Acquisition of Non-Drug Property and Regulatory Seizures forms;

(f) 1 Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC
    TV Equipment (Non-Telephone);

(g) 3 DEA Forensic Chemist Worksheets, including back page;

(h) 17 pages of laboratory worksheets;

(i) 4 DEA Disposition of Non-Drug Evidence;

(j) 1 DEA Voucher for Payment for Information and Purchase of Evidence

(k) 5 Cables;

(l) 5 memoranda;

(m) 3 Fugitive Cancellation Reports;

(n) 6 Fugitive Declaration Report;

(o) 2 Fugitives Search Results lists; and

(p) 1 Current Fugitive list.

Little Decl. ¶ 44.

DEA investigative case files are established by the office commencing an investigation.
The files are titled according to the name of the principal suspect violator or entity known to

DEA at the time the file is opened. DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest. Little Decl. ¶ 45.

Information gathered during the course of a DEA investigation is systematically gathered and included in the investigative case file. This information relates to the case subject and may also include other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the file. Little Decl. ¶ 46.

The IRFS investigative case files generally contain several types of forms and other miscellaneous documents. The forms generally include (a) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a; (b) the DEA Personal History Report, DEA Form 202; DEA Defendant Disposition Report, DEA Form 210; (c) the DEA Form 7, Report of Drug Property Collected, Purchased or Seized; (d) the DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures; (e) the DEA Disposition of Non-Drug Evidence, DEA Form 48a; and, (f) other miscellaneous memoranda and documents such as cables. Little Decl. ¶ 47.

The DEA Form 6 and form 6a are multi-block forms that comprise the DEA ROI. The forms are used by DEA to memorialize investigative and intelligence activities and information. The Form 6 is the initial page of the ROI and consists of 15 numbered blocks. Blocks 1 through 10 appear at the top and Blocks 11 through 15 at the bottom. The middle of the page is the narrative section in which investigative details and information, and intelligence information are recorded. The Form 6a is the continuation page of the ROI and consists of six (6) numbered blocks appearing at the top followed by the narrative section that extends to the bottom of the page. Little Decl. ¶ 48.

9

The Form 6 Block 4 and Form 6a Block 2 contain a G-DEP identifier. The Form 6 Blocks 5, 9, 12, and 14 contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. The Form 6 Block 6 and Form 6a Block 3 contain the file title, which is generally the subject of the investigation. Little Decl. ¶ 49.

The narrative section may be broken into several sections which include a "Synopsis," "Details," "Evidence," "Vehicle Indexing" and/or "Indexing" sections. Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate individuals and entities, by name, that are of investigative interest which the agent or intelligence analyst designates to be listed in NADDIS. In addition to the name of an individual, the indexing section may provide identifying details for the indexed individuals or entity that may include physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations. Little Decl. ¶ 50.

The DEA Personal History Report, DEA Form 202, is a two-page multi-block form used: (1) to identify and classify an individual, or update an earlier identification or classification under G-DEP, either prior to or at the time of the arrest, (2) to declare a defendant a fugitive, (3) as part of the establishment of a cooperating individual and (4) to correct personal data in the NADDIS index. The form consists of 76 blocks that are completed depending on the circumstances. Block 1 or 4a contains the file title, which is generally the subject of the investigation. Block 2 or 5 contain a G-DEP identifier; blocks 68, 69, 71, 72, 74, and 75 normally contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. Blocks 8 through 57 contain identifying information about the individual to whom the form pertains. Blocks 42 through 67 contain information related to and explaining the action being taken. Little

Decl. ¶ 51.

DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as the source document for the compilation of DEA defendant statistics, as well as the means by which DEA and the Federal Bureau of Investigation (FBI) track individual cases brought against DEA defendants. A separate form 210 is prepared for each defendant prosecuted as the result of DEA investigative efforts. The form consists of 25 blocks of which Block 5 contains the G-DEP identifier; Block 6, the file title; Blocks 7 and 16, the defendant's name; Block 9, the defendant's NADDIS number; Blocks 16 - 20, personal information and identifiers of the defendant; and, Blocks 24 and 25, the name and signature of a DEA Special Agent or other law enforcement officer. Little Decl. ¶ 52.

The DEA Form 7, Report of Drug Property Collected, Purchased or Seized, includes a description of the alleged drugs seized, the quantity seized, and a laboratory analysis/comparison report. The form consists of 39 blocks of which Block 3 contains the G-DEP identifier; Block 5, the file title; Block 16, the "Remarks," contains descriptive information that may include names of law enforcement officers and third parties, and other information regarding the seizure; Blocks 17, 18, 20, 21, 23, 24, 34 and 37 contain the names and/or signatures of DEA Special Agents, other law enforcement personnel or DEA employees. Little Decl. ¶ 53.

The DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures is used to report any non-drug property acquired. DEA uses the DEA-Form 7a to log or maintain a record of the non-drug property. The form consists of 31 blocks of which Block 4 contains the G-DEP identifier; Block 5, the file title; and Blocks 13 -18, 20, 21, 28 and 30, the names and signature of a DEA Special Agent or other law enforcement officer. Little Decl. ¶ 54.

11

The DEA Disposition of Non-Drug Evidence, DEA Form 48a, records the disposition of non-drug evidence. Similar to the DEA 48 and unlike other DEA forms, the blocks are not numbered, but are self explanatory. Little Decl. ¶ 55.

The DEA Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC TV Equipment (Non-Telephone), DEA Form 248, is a multi-block form used to request, record use and approve non-telephone consensual eavesdropping and surveillance. The form contains three sections that include an introductory and approval section, and Part I and Part II. The introductory section contains a File Number block, a G-DEP Identifier block, a File Title block and an Authorization block. Part I contains 9 numbered blocks and Part II consists of 10 numbered blocks. Little Decl. ¶ 56.

The Forensic Chemist Worksheet, DEA Form 86, is used to record the description of the evidence item and its packaging, including numerical identification, and recording the information as the items are initially removed from the evidence container. Additionally, this document is used to record actions taken during the analysis of the evidence item. These worksheets are used to record all rew data, observations and calculations and should be written to permit adequate reconstruction of the analysis of examination performed. Little Decl. ¶ 57.

Also included in the responsive documents were cables, Fugitive Cancellation Reports, a Current Fugitives report, Memoranda, Fugitive Search Results, Current Fugitive documents, and miscellaneous laboratory worksheets. Little Decl. ¶ 58.

**E.   Defendant Appropriately Relied On Privacy Act Exemption (j)(2)**

Subsection (j)(2) of the Privacy Act exempts the following records from mandatory disclosure:

12

records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of ...(B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C)reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

1.    **DEA Properly Applied Exemption (j)(2)**

DEA is a component of the Department of Justice whose primary responsibility is the enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and chemicals, including the Drug Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq.  See 28 C.F.R. § 0.100.  Little Decl. ¶ 60.

IRFS is a Privacy Act System of Records that was last reported at 66 Fed. Reg. 8425 and last published in its entirety at 61 Fed. Reg. 54219.  In accordance with the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. § 552a(j)(2), to exempt records contained in IRFS from access.  28 C.F.R. § 16.98(c)(3).  Little Decl. ¶ 61.

In accordance with the Privacy Act, 5 U.S.C. § 52a(b), except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, unless disclosure of the records is required by the FOIA, for a routine use or pursuant to the order of a court of competent jurisdiction, information was withheld by, DEA.  No routine use existed for and the plaintiff did not provide a release authorization or proof of death for the release of any third party information, and no court order has been received by DEA.  Thus, the release of information is only that which is required by the FOIA.  Little Decl. ¶ 62.  Accordingly, the DEA

13

properly applied Exemption (j) 2.

A detailed discussion of the basis and justification for invoking the Freedom of Information Act exemptions for all of the redacted material, are set forth below. The exemptions utilized by DEA to withhold material pursuant to the Freedom of Information Act are (b)(2), (b)(3), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(F) of 5 U.S.C. § 552. Little Decl. ¶ 59.

**F.    Defendant Appropriately Relied On Exemption (b)(2)**

Pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2"), the Government is not required to disclose records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. Department of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); Schiller v. N.L.R.B., 964 F.2d 1205, 1207 (D.C. Cir. 1992); National Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981); Truesdale v. U.S. Dept. of Justice, 2005 WL 3294004, *4 - *5 (D.D.C. 2005); Gonzalez v. Bureau of Alcohol, Tobacco and Firearms, 2005 WL 3201009, *6 (D.D.C. 2005); Dorsett v. U.S. Dept. of Treasury, 307 F.Supp.2d 28, 35-36 (D.D.C. 2004); Edmonds v. F.B.I., 272 F.Supp.2d 35, 50 (D.D.C. 2003).


**1.    DEA Properly Applied Exemption 2**

Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, most of the

pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug

Enforcement Program) codes, NADDIS numbers, and confidential informant numbers. The G-

DEP, NADDIS, and confidential informant numbers are part of DEA's internal system of

identifying information and individuals. Little Decl. ¶ 64.

> (a) G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity. Id.

> (b) NADDIS numbers are multi-digit assigned to drug violators and suspected drug violators know to DEA. Each number is unique and is assigned to only one violator within the DEA NADDIS indices. (The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98 (2005). Knowledge of the NADDIS number provides a means of finding out not only drug violator information about the subject but also personal information about himself, relatives and any third parties identifiable with the violator. Thus, Exemption (b)(7)(C) was used in conjunction with (b)(2) to withhold third-party NADDIS numbers. Id.

> (c) Informant identifier codes are assigned to DEA and other law enforcement agency cooperating individuals and are used instead of their names in all DEA reports, memoranda and other internal correspondence. Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out its law enforcement functions. Exemptions (b)(7)C), (b)(7)(D) and (b)(7)(F) were used in conjunction with (b)(2) to withhold these identities. Id.

The release of the G-DEP codes would help identify priority given to narcotic

investigations, types of criminal activities involved, and violator ratings. Suspects could decode

this information and change their pattern of drug trafficking in an effort to respond to what they

determined DEA knows about them or avoid detection and apprehension create alibis for

suspected activities. Disclosure of the codes would, therefore, thwart the Drug Enforcement

Administration's investigative and law enforcement efforts. Little Decl. ¶ 65.

NADDIS numbers and informant identifier codes are unique and personal to the

individual to whom the number applies.  They are assigned by DEA for internal use and there is

no public interest in the release of these codes.  Little  Decl. ¶ 66.  Thus, exemption 2 was

properly applied.

**G.    Defendant Has Properly Withheld Information Pursuant To Exemption (b)(3)**

   Title 5, United States Code, Section 552 (b)(3) (hereinafter Exemption 3) allows the
   withholding of information protected frm disclosure by another statute if that statute:
   (A) requires that the matters be withheld from the public in such a way as to
   leave no discretion on the issue, or (B) establishes particular criteria for withhold
   or refers to particular types of matters to be withheld.

5 U.S.C. § 552 (b)(3).

   While records may be withheld under the authority of another statute pursuant to

Exemption 3 if and only if that statue meets the requirements of Exemption 3, the breadth and

reach of the disclosure prohibition does not necessarily have to be found on the face of the statute

in question.  The statute must at least explicitly deal with public disclosure.  Reporters Comm.

for Freedom of the Press v. U.S. Dept. of Justice, 816 F.2d 730, 734-36 (D.C. Cir. 1987),

modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S.

749 (1989).  Once an agency establishes that a statute is a nondisclosure statute and that it meets

at least one of the requirements of Exemption 3, it must also establish that the records at issue

fall within the withholding provision of the nondisclosure statute.  Fund for Constitutional

Government v. National Archives and Records Service, 656 F.2d 856, 866-69 (D.C.Cir. 1981).

Typically, this requires an interpretation of the nondisclosure statute.  See Washington Post Co.

v. U.S. Dept. of Justice, 863 F.2d 96, 100 (D.C.Cir. 1988).

   Exemption (b)(3) of the FOIA permits the withholding of information prohibited from

disclosure by another statute only if one of two disjunctive requirements are met: the statute

either (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. A statute thus falls within the exemption's coverage if it satisfies any one of its disjunctive requirements.

Title 18, U.S.C. § 2517 of the Federal Rules of Criminal Procedure, Title III, prohibits the disclosure of information obtained from the use of a court approved wiretap. Pages 31, 32, 160, 165, 270, 253-254 and 262 of the withheld pages concern the wiretaps approved by the Federal court during the investigation of the plaintiff's criminal organization. Little Decl. ¶ 67. Accordingly, exemption (b)(3) was properly applied for the pages relating to wiretaps.

**Exemption (b)(7) Threshold**

DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq.* (hereinafter, the Act) which authorizes DEA to enforce the Act through the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies aborad and to exchange information in support of drug traffic prevention and control. Little Decl. ¶ 68.

The records deemed responsive to the plaintiff's FOIA request are criminal investigative records. The records were compiled during criminal law enforcement investigations of the plaintiff and several third parties. Little Decl. ¶ 69.

**H.    Defendant Has Properly Withheld Information Pursuant To Exemption (b)(7)(A)**

Exemption 7(A) authorizes agencies to withhold "records or information compiled for

17

law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552 (b)(7)(A). In defending an Exemption 7(A) withholding, the agency must show that (1) a law enforcement proceeding is pending, or reasonably regarded as prospective, see Manna v. U.S. Dept. of Justice, 51 F.3d 1158, 1164 (3rd Cir. 1995), or as preventative, see, e.g., Moorefield. v. United States Secret Service, 611 F.2d 1021, 1026 (5th Cir. 1980), and (2) that the release of the information could reasonably be expected to cause some articulable harm. See Manna, 51 F.3d at 1164. An articulable harm occurs "whenever the government's case in court would be harmed by the premature release of evidence or information," N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 232 (1978), or when disclosure would impede any necessary investigation prior to the enforcement proceeding. Dickerson v. Department of Justice, 992 F.2d 1426, 1429 (6th Cir. 1993).

Once the first threshold requirement is satisfied, the agency must establish that the release would result in an articulable harm. To satisfy this burden, the agency must provide at least a general description of the types of documents at issue sufficient to indicate the type of interference threatening the law enforcement proceeding. Curran v. Department of Justice, 813 F.2d 473, 475 (1st Cir. 1987); Spannaus v. U.S. Dept. of Justice, 813 F.2d 1285, 1287 (4th Cir. 1987) (holding that a categorical description of the withheld material is sufficient because any further details "would lead to disclosure of the very information sought to be protected").

1.    **DEA Properly Applied Exemption 7(A)**

The DEA investigation in which information about the plaintiff is maintained is an open investigation. Little Decl. ¶ 70. Accordingly, as set forth below, defendant has properly applied

18

exemption (b)(7)(A).

The investigations remains open, since there are indicted individuals who are fugitives and others who are of investigative interest to DEA. All of the responsive pages, except 73-81, 122, 159 and 395 - 418 were withheld in their pursuant to exemption 7(A).[3] The information relates to the criminal activity of the plaintiff, the plaintiff's criminal associates and third-parties. If released, potential witnesses and information against the individuals who are indicted fugitives and other, would assist them in avoiding apprehension, allow them to develop alibis, create factitious defenses or intimidate, harass or harm potential witness. Thus, release of any information could interfere with the ongoing investigation and eventual criminal proceedings. Little Decl. ¶ 71.

The documents processed by DEA were a DEA 210, Defendant Disposition Report; two (2) DEA 202s, Personal History Reports, and a DEA 6, Report of Investigation (ROI) that included the details of the plaintiff's arrest, and the laboratory results of DEA Investigation No. KY-97-0069, Drug Exhibit 4. These documents were particular to the plaintiff for which the release would not interfere with an ongoing criminal investigation or enforcement proceeding. Little Decl. ¶ 72.

## I.    Defendant Has Properly Withheld Information Pursuant To Exemption (b)(7)(C)

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an

---

[3] Because the Court of Appeals has instructed that agencies must generally assert all exemptions in the District Court or risk being precluded from asserting them, see Maydak v. U.S. Dept. of Justice, 218 F.3d 760, 769 (D.C. Cir. 2000), defendant has asserted and documented other FOIA Exemptions in addition to Exemption 7(A).

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Supreme Court has affirmed the broad scope of Exemption 7(C) in <u>National Archives and Records Admin. v. Favish</u>, 541 U.S. 157, 124 S. Ct. 1570 (2004) (upholding application of Exemption 7(C) and recognizing substantial privacy interests of federal and non-federal law enforcement officer and other government employees). When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 340 (D.C. Cir. 1987), <u>citing</u> <u>Pratt v. Webster</u>, 673 F.2d 408, 418 (D.C.Cir. 1982). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" <u>Keys</u>, 830 F.2d at 340, <u>quoting</u> <u>Pratt v. Webster</u>, 673 F.2d 408, 421 (D.C. Cir. 1982).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. <u>See</u>, <u>e.g.</u>, <u>Favish</u>, S. Ct. at 1580-82; <u>U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 776-80 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' <u>Department of Air Force v. Rose</u>, 425 U.S. 352, 372 (1976), rather than on the particular purpose for which the document is being requested." <u>Reporter's Committee</u>,

20

489 U.S. at 772 (internal quotation marks omitted). Information that does not directly reveal the

operations or activities of the government "falls outside the ambit of the public interest that the

FOIA was enacted to serve." Id. at 775. That public interest is to "shed[] light on an agency's

performance of its statutory duties." Id. at 772. The plaintiff bears the burden of establishing

that the "public interest in disclosure is both significant and compelling in order to overcome

legitimate privacy interests." Perrone v. F.B.I., 908 F. Supp. 24, 26 (D.D.C. 1995), citing Senate

of the Com. of Puerto Rico on Behalf of Judiciary Committee v. U.S. Dept. of Justice, 823 F.2d

574, 588 (D.C.Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant"

that matters. Brown v. Federal Bureau of Investigation, 658 F.2d 71, 75 (2nd Cir. 1981). "[T]he

only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens'

right to be informed about what their government is up to.'" Davis v. U.S. Dept. of Justice, 968

F.2d 1276, 1282 (D.C. Cir. 1992) (quoting Reporters Committee, 489 U.S. at 773 (internal

quotation marks omitted)). Further, courts have explicitly recognized that the privacy interests of

third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in

disclosure (of third-party identities)is not just less substantial, it is insubstantial." SafeCard

Services, Inc. v. S.E.C., 926 F.2d 1197, 1205 (D.C.Cir. 1991). Our court of appeals has held

"categorically" that "unless access to names and addresses of private individuals appearing in

files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling

evidence that the agency is engaged in illegal activity, such information is exempt from

disclosure." SafeCard Services, 926 F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects and other

persons of investigatory interest who are identified in agency records in connection with law

enforcement investigations. Reporters Committee, 489 U.S. at, 780); Computer Professionals for

Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong

interest of individuals, whether they be suspects, witnesses, or investigators, in not being

associated unwarrantedly with alleged criminal activity,'" quoting Dunkelberger v. Department of

Justice, 906 F.2d 779, 781 (D.C.Cir. 1990). Indeed, an agency may categorically assert

Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law

enforcement files in such a way as to associate them with criminal activity. Reporters

Committee, 489 U.S. at 780; Nation Magazine, Washington Bureau v. U.S. Customs Service, 71

F.3d 885, 893, 895-96 (D.C.Cir. 1995); SafeCard Services, 926 F.2d at 1206.

 Likewise, the names of law enforcement officers who work on criminal investigations

have traditionally been protected against release by Exemption 7(C). Davis, 968 F.2d at 1281;

Lesar v. U.S. Dept. of Justice, 636 F.2d 472, 487-88 (D.C.Cir. 1980). Similarly, individuals who

provide information to law enforcement authorities, like the law enforcement personnel

themselves, have protectable privacy interests in their anonymity. Computer Professionals for

Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275

(D.D.C., 1987). The Vaughn index provided reflects clearly that Exemption 7(C) was

appropriately applied in this case to protect names and personal information on individuals.

1. **DEA Properly Applied Exemption 7(C)**

 Many of the documents in the investigative case file contain names and other identifying

information which would reveal the identity of and disclose personal information about

individuals who were involved or associated with the plaintiff. The individuals are protected

from the disclosure of their identities. Little Decl. ¶ 73.

In making the determination to withhold this information, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. In this instance, the plaintiff provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals. Thus, disclosure the identities would be an unwarranted invasion of their personal privacy. Little Decl. ¶ 74.

In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy. Little Decl. ¶ 75

The identities of DEA Special Agents, and other Federal, state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file. Little Decl. ¶ 76.

The Special Agents and other law enforcement officers were assigned to handle tasks

relating to the official investigation into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of DEA agents. Little Decl. ¶ 77.

The identities of government employees, including DEA and FBI Special Agents, and a DEA non-drug evidence custodian were withheld. Releasing their identities and information pertaining to these individuals would place them in such a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in a criminal law enforcement investigatory file. Little Decl. ¶ 78.

Government employees were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Also, release of their identities would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of government employees. Little Decl. ¶ 79. Accordingly, defendant has properly applied exemption (b)(7)(C).

**J.    Defendant Has Properly Withheld Information Pursuant To Exemption (b)(7)(D)**

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information compiled for law enforcement purposes if the disclosure:

could reasonably be expected to disclose the identity of a confidential source, including a

24

State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D). Exemption 7(D)'s "paramount objective" "is to keep open the

Government's channels of confidential information." Birch v. United States Postal Service, 803

F.2d 1206, 1212 (D.C. Cir. 1986).[4]

When invoking Exemption 7(D), the agency must demonstrate that the information was

compiled for a law enforcement purpose, that an informant provided the information under either

an express or an implied promise of confidentiality and, under the first clause of 7(D), that

disclosure could reasonably be expected to disclose the source's identity. U.S. Dept. of Justice v.

Landano, 508 U.S. 165, 171-72 (1993). If an individual has not been given an express promise

of confidentiality, the agency may demonstrate that a source has been given an implied promise

of confidentiality based upon the circumstances of the case. Landano, 508 U.S. at 179-80. The

government may establish implied assurances of confidentiality by describing "generic

circumstances in which an implied assurance of confidentiality fairly can be inferred." Id. at 179.

However, once an agency establishes an express or implied promise of confidentiality, it is

extremely difficult to overcome. In order to do so, the plaintiff must come forward with

---

[4] The term "confidential source" is very broad. See, e.g., Gula v. Meese, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); Putnam v. U.S. Dept. of Justice, 873 F. Supp. 705, 716 (D.D.C. 1995) (medical personnel). Moreover, the term "confidential" signifies that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others. Dow Jones & Co., Inc. v. Department of Justice, 917 F.2d 571, 575-76 (D.C. Cir. 1990). As such, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." U.S. Dept. of Justice v. Landano, 508 U.S. 165, 172 (1993).

"'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'" Parker, 934 F.2d at 378, quoting Dow Jones & Co., Inc. v. Department of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g denied en banc, 917 F.2d 571 (D.C. Cir. 1990).

The Court in Landano stressed two factors to be considered in determining whether an implied promise of confidentiality exists: "the nature of the crime investigated and the witness' relation to it." Id. at 181. In applying these factors, a key consideration is the potential for retaliation against the source. Id. at 179-180; see also, Williams v. F.B.I., 69 F.3d 1155, 1159 (D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); Hale v. U.S. Dept. of Justice, 99 F.3d 1025, 1031 (10th Cir. 1996).

Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well. The first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity. Pollard v. F.B.I., 705 F.2d 1151, 1155 (9th Cir. 1983); see also Stone v. Defense Investigative Service, 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); Doe v. U.S. Dept. of Justice, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity"). The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

26

Importantly, unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests. Parker v. Department of Justice, 934 F.2d 375, 380 (D.C. Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); Jones v. F.B.I., 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure"). Therefore, "once the agency receives information from a "'confidential source" during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.'" Parker, 934 F.2d at 380 (editing by the court, quoting Lesar v. U.S. Dept. of Justice, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)). Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, Ortiz v. U.S. Dept. of Health and Human Services, 70 F.3d 729, 733 (2nd Cir. 1995), cert. denied, 517 U.S. 1136 (1996), and after the death of the source. Campbell v. U.S. Dept. of Justice, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

1.    **DEA Properly Applied Exemption 7(D)**

### Express Confidentiality - Coded Informants

Coded informants are individuals who have a continuing cooperative association with DEA. These individuals are expressly assured confidentiality in their identities and the information they provide to DEA. They are also assured that their names will not be used in DEA investigative materials. They are assigned an identification code which is used in place of their name or referred to as CI. Little Decl. ¶ 81.

Pages "92" and "93" comprise a two page ROI containing personal information about a coded informant. The plaintiff's name is mentioned on the pages only as the file title. Little

Decl. ¶ 82.

Pages "113" and "114" comprise a two page ROI containing a debriefing of a coded informant, who provided information about the drug trafficking activities of himself/herself and third parties. The plaintiff's name is mentioned on the pages only as the file title. Little Decl. ¶ 83.

Pages "369" and "370" comprise a two page cable containing information about a coded informant. The plaintiff's name appears only in the subject line on page "369." Little Decl. ¶ 84.

### Sources with Implied Confidentiality

When it cannot be ascertained that a source was found to have been expressly made a promise of confidentiality, certain circumstances characteristically may support an inference of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime. Little Decl. ¶ 85.

The plaintiff was convicted of conspiracy to distribute methamphetamine. Nine firearms were seized from the plaintiff at the time of his arrest. It is reasonable to infer that the individuals who provided information about the plaintiff would fear for their safety, since violence is inherent in the trade in illicit substances such as methamphetamine, if their identities or the information they provided was revealed. Additionally, release of the name of the sources could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals could be needed in future criminal investigations. Little Decl. ¶ 86.

Page "73" is the second page of the plaintiff's DEA 202. The page contains information from a 19th Judicial Drug Task Force about the drug trafficking activities of himself/herself and the plaintiff. Little Decl. ¶ 87.

28

Pages "83" and "84" comprise a two page ROI containing an interview of a named confidential source, who provided information about the drug trafficking activities of himself/herself, the plaintiff, and third parties. The plaintiff's name is listed only as the file title and in the Indexing Section on page "84." Little Decl. ¶ 88.

Page "87" is a one page ROI containing intelligence regarding a third party. The page contains information from a named confidential source about the activities of a third party. The plaintiff's name is mentioned on the page only as the file title. Little Decl. ¶ 89.

Page "89" is a one page ROI containing intelligence regarding third parties. The page contains information from a named confidential source about the drug trafficking and other activities of third parties. The plaintiff's name is mentioned on the page only as the file title. Little Decl. ¶ 909.

Pages "100" through "103" comprise a four page ROI containing an interview with a named confidential source, who provided information about his/her drug trafficking interaction with the plaintiff and third parties. Information about the plaintiff is found throughout the document. Little Decl. ¶ 91.

Pages "104" and "105" comprise a two page ROI containing an interview with a named confidential source, who provided information about his/her drug trafficking interaction with third parties. The plaintiff's name is listed only as the file title on each page. Little Decl. ¶ 92.

Pages "108" through "110" comprise the first three pages of a four page ROI containing an interview with a named confidential source, who provided information about his/her drug trafficking interaction with the plaintiff and third parties. Information about the plaintiff is found throughout the document. Little Decl. ¶ 93.

Pages "194" and "195" comprise a two page ROI containing an interview with a named confidential source, who provided information about his/her drug trafficking interaction with third parties. The plaintiff's name is listed only as the file title on each page. Little Decl. ¶ 94.

Page "196" is a one page ROI containing an interview of a named confidential source about the drug trafficking activities of third parties. The plaintiff's name is mentioned on the page only as the file title. Page "197" is a duplicate of page "196." Little Decl. ¶ 95.

Page "227" is a one page ROI containing an interview of a named confidential source about the activities of third parties. The plaintiff's name is mentioned on the page only as the file title. Little Decl. ¶ 96.

Pages "350" and "351" comprise the first two pages of a three page ROI describing the acquisition of a state item. The page contains information about the drug trafficking interaction between a confidential source and the plaintiff. Little Decl. ¶ 97.

Page "353" and "354" comprise the first two pages of a three page ROI describing the acquisition of a state item. The page contains information about the drug trafficking interaction between a   confidential source and the plaintiff. Little Decl. ¶ 98.

Page "356" is the first two page of a two age ROI describing the acquisition of a state item. The page contains information about the drug trafficking interaction between a 19th Judicial Task Force  confidential source and the plaintiff. Little Decl. ¶ 99.

Page "358" and "359" comprise a two page ROI describing the acquisition of a state item. The page contains information about the drug trafficking interaction between a 19th Judicial Task Force confidential source and the plaintiff. Little Decl. ¶ 100.

Page "360" is the first page of a two page ROI containing the case initiation of the

30

plaintiff's investigation. The page contains information from a 19th Judicial Task Force confidential source about the drug trafficking activities of the plaintiff. Little Decl. ¶ 101.

Accordingly, defendant has properly applied (b)(7)(D).

**K.    Defendant Has Properly Withheld Information Pursuant To Exemption (b)(7)(F)**

Title 5, United States Code, Section 552 (b)(7)F) (hereinafter Exemption 7(F)) protects from mandatory disclosure information compiled for law enforcement purposes if disclosure would reasonably be expected to endanger the life or physical safety of any individual, 5 U.S.C. § 552 (b)(7)(F). Courts have consistently upheld the application of this exemption to protect information identifying law enforcement officers, and special agents who are especially likely to be in contact with violent suspects. Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977); Albuquerque Pub. Co. v. Department of Justice, 726 F. Supp. 851, 858 (D.D.C., 1989); Docal v. Bennsinger, 543 F. Supp. 38, 48 (M.D.Pa. 1981); Nunez v. Drug Enforcement Administration, U.S. Dept. of Justice, 497 F. Supp. 209, 212 (S.D.N.Y. 1980). Although this Exemption applies to information that is also subject to the protection of Exemption 7(C), supra, there is no balancing required with the use of Exemption 7(F) and it is difficult to imagine any public interest that could outweigh the safety of an individual.

**1.    DEA Properly Applied Exemption 7(F)**

The names of DEA Special Agents, Supervisory Special Agents, Federal Bureau of Investigation (FBI) Special Agents, a DEA Task Force officer, a Deputy United States Marshal, and state/local law enforcement officers were withheld in accordance with 5 U.S.C. § 552 (b)(7)(F). Little ¶ 102.

DEA Special Agents and Supervisory Special Agents, as well as members of other law

31

enforcement entities, are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations. Little Decl. ¶ 103.

Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations. Little Decl. ¶ 104.

In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public realm. DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs. Public disclosure of the identities of investigatory personnel would have a detrimental effect on the successful operation of DEA, as well as risk harassment and danger to its agents and other law enforcement personnel. This information was also withheld pursuant to Exemption (b)(7)(C). Little Decl. ¶ 105. Accordingly, defendant properly applied (b)(7)(F).

**L.    Segregability**

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u>

32

sponte." Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Central, Inc. v. U.S. Dept. of Air Force, 566 F.2d 242, 260 (D.C.Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C.Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

Defendant DEA has produced all segregable information contained in its respective file records. To demonstrate that all reasonably segregable material has been released, the agency must show "with reasonable specificity" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C.Cir. 1996).

**DEA's Segregability**[1]

Pages 1 through 72, 79 through 121, 123 through 158, and 160 through 394 are withheld

in their entirety pursuant to FOIA exemption (b)(7)(A), were examined to determine whether any

reasonably segregable information could be released. After information is withheld pursuant to

FOIA Exemptions (b)(), (b)(3), (b)(7)(A), (b)(7)(C), (b)(7)(D) and (b)(7)( F), only blank pages,

pages with only the plaintiff's name and identifying information, the investigative file number

and/or pages with incomprehensible words and phrases would remain. The release of that

information would not contribute to the understanding of how DEA or how the Governments

conducts business. Thus, the pages were withheld in their entirety. Little Decl. ¶ 106.

Of the pages to which (b)(7)(A) does not apply, which includes 73 - 78, 122, 159 and 395

- 418, pages 74 and 81, withheld in their entirety, were examined to determine whether any

reasonably segregable information could be released. Little Decl. ¶ 107.

Page "74" is the second page of the plaintiff's DEA 202. The page is withheld in its

---

[1] "Reasonably segregable" also includes consideration of the time and effort that would
be expended to exclude or include information in a record or document being processed. The
current redaction process employed by DEA entails the use of translucent red cellophane tape.
After the tape is applied, the document is copied and the information intended to be withheld is
blackened in the copying process. Once tape is applied, it generally cannot be removed. The
tape lifts the print from the paper, if removal is attempted or if it inadvertently touches print not
intended to be withheld. The page must then be recopied and the process begun again. The
process of applying a thin strip of tape is tedious, cumbersome and time consuming; however, it
is the most effective and efficient means currently available to DEA to withhold information
based upon the manner and methods in which DEA records information and maintains its
records. Consequently, the importance of releasing a particular word, when an error occurs, is
balanced against the cost of redoing an entire page. In making the determination to redo a page
or pages, consideration is given as to whether the information which could be released will add
any value in disclosing or shedding light on how the Government conducts business. Thus,
although an additional word could be released, or the same word is withheld in one instance and
not in another, a balance is struck between the cost of re-processing the entire page and the value
of the word or phrase that could be released. Little Decl. Fn. 3.

entirety pursuant to FOIA exemptions (b)(7)(C), (b)(7)(D), (b)(7)(F). The pages contains

information from a 19th Judicial Task Force confidential source regarding the drug trafficking

activities of the plaintiff and other third-parties. Information about the plaintiff is inextricably

intertwined with information about the confidential source and the third-parties. The release of

any additional information would (1) result in the disclosure of no useful information, or

incomprehensible words and/or phrases that would not shed any light on how the Government

conducts business, (2) could result in compromising the identity of and information provided by

sources of information who were granted express confidentiality or, because of the circumstance,

implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy

when balanced against the public interest in the release of information gathered during the course

of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third parties which

includes sources of information, individuals associated with or mentioned in the investigative

reports, and DEA agents and other law enforcement personnel. Information about the plaintiff

was inexorably intertwined with information about third-parties. Little Decl. ¶ 108.

Page "81" is the fifth page of a five page ROI describing the execution of a federal search

warrant. The page is withheld in its entirety pursuant to FOIA exemptions (b)(2) and (b)(7)(C).

The page contains only the latter portion of the Indexing Section. The plaintiff's name is

mentioned only as the file title. Little Decl. ¶ 109.

Here, defendant found that no information was segregable from exemption information.

See Little Decl. ¶¶ 106 - 109 and the Vaughn Index submitted herewith. Because no non-exempt

information was found in relation to documents withheld in full, it was not possible to further

segregate.

## III. CONCLUSION

Defendant Drug Enforcement Administration has demonstrated that it responded properly to plaintiff's FOIA request, releasing to him all records and portions thereof not exempted from disclosure. Accordingly, defendant respectfully requests that the Motion for Summary Judgment be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney


BRENDA C. WILLIAMS
Paralegal Specialist

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___31 ST___ day of July, 2006, that a copy of the foregoing was

filed and served by First-Class mail; postage prepaid to:

Joe Louie Mendoza
R05776-010
Memphis Federal Correctional Institution
P.O. Box 34550
Memphis, TN 38184

WYNEVA JOHNSON
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W., E-4106
Washington, D.C. 20530
(202) 514-7224