## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOE L. MENDOZA** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) |
| | )   **Civil Action No. 06-0591 ESH** |
| **DRUG ENFORCEMENT ADMINISTRATION** | ) |
| | ) |
| **Defendant** | ) |
| | ) |

## DECLARATION OF WILLIAM C. LITTLE, JR.

I, William C. Little, Jr., hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am an Attorney admitted in and a member in good standing in the Bar of the State of Pennsylvania.

2. I am currently employed as a practicing attorney by the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), where I am assigned to the Office of Chief Counsel, Administrative Law Section.

3. Within the DEA Office of Chief Counsel, I am the attorney responsible for matters involving the Freedom of Information Act (FOIA), 5 U.S.C.§ 552 and Privacy Act (PA), 5 U.S.C. § 552a, in which DEA is an interested party. I have served in this capacity since about April 26, 1999.

4. As an attorney, I have been involved in FOI/PA since 1994. I have received training formal and on the job training in the FOI/PA, and the administration of Federal records and PA Systems of Records.

5. I am familiar with the DEA policies, practices and procedures regarding the administration of, and processing and release of information requested under the FOIA and PA, and DEA PA Systems of Records.

6. I am responsible for review, for litigation purposes, of both the initially processed and appealed, FOI/PA requests that are received by DEA, and provide litigation support for matters all arising under the Freedom of Information Act and the Privacy Act (PA) in which DEA is an interested party.

7. In defense of FOI/PA actions, I am responsible for taking remedial action when ordered by courts or when deficiencies in responding to, processing or release of information are noticed in the course of litigation review.

8. I prepare, and review and supervise the preparation of, affidavits, declarations, responses to discovery motions, interrogatories and other court pleadings, and all necessary legal research on issues arising during the course of the prosecution or defense of FOI/PA actions in which DEA is a party.

9. The DEA Freedom of Information Operations Unit (SARO) is the DEA office responsible for responding to, the search for, and the processing and release of information requested under FOIA and PA received by DEA. I am also familiar with the policies, practices and procedures

-2-

SARO employs that relate to the search for, and the processing and release of information responsive to FOIA/PA requests received by DEA.

10. In preparing this declaration, I have read and am familiar with the complaint, in the above entitled action, and the records maintained by the DEA Freedom of Information Operations Unit (SARO).

## SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

### DEA FOIA REQUEST 02-0779-P

11. By letter dated January 28, 2002, addressed to DEA's South Central Laboratory, the plaintiff requested all DEA records concerning himself, specifically requesting:

(a) all reports of the chemical composition of any and all substance that were obtained by your agency through any other agency under my name for laboratory analysis;

(b) investigation and /or investigatory reports;

(c) reports or evidentiary and/or scientific information findings;

(d) final and closing investigation reports; and,

(e) any and /or all information, data, or reports not otherwise exempt by statute.

A copy of the plaintiff's letter dated January 28, 2002, is attached as Exhibit A.

12. The plaintiff's letter dated January 28, 2002, was forwarded to the DEA Freedom of Information Section by the Laboratory Director of the South Central Laboratory Memorandum

dated February 21, 2002. A copy of the DEA memorandum dated February 21, 2002, is attached as Exhibit B.

13. By letter dated March 8, 2002, DEA returned the request letter to the plaintiff, informing him that it was necessary for him to submit a notarized signature, and providing him with a blank Certification of Identity. A copy of the DEA letter dated March 8, 2002, is attached as Exhibit C.

14. The plaintiff returned the request with the signed Certification of Identity, along with a note informing DEA that information could be sent to him at 125 Las Villas, Brownsville, TX 78521. Copies of the signed Certification of Identity and note from the plaintiff are attached as Exhibit D.

15. By letter dated April 5, 2002, DEA informed the plaintiff that it had received his request and that it would be handled in approximate order of receipt. In the letter, DEA also informed the plaintiff that by filing his request he had agreed to pay fees up to $25.00, unless he sought a waiver of fees. A copy of the DEA letter dated April 5, 2002, is attached as Exhibit E.

16. By letter dated April 22, 2002, DEA released to the plaintiff portions of six pages, numbered 73, 75-78 and 395. Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and PA exemption (j)(2). The remaining 389 pages were withheld in their entirety pursuant to FOIA Exemption (b)(7)(A). A copy of the DEA letter dated April 22, 2002, is attached as Exhibit F.

17. By letter dated May 22, 2002, the plaintiff appealed DEA's response to the Department of Justice, Office of Information and Privacy (OIP). A copy of the plaintiff's letter dated May 22, 2002, is attached as Exhibit G.

18. By letter July 19, 2002, OIP acknowledged the plaintiff's appeal, assigning it appeal number 02-2351, and informing him that it would be handled in approximate order of receipt. A copy of the plaintiff's letter dated July 19, 2002, is attached as Exhibit H.

19. By letter dated August 10, 2004, OIP informed the plaintiff that as a result of discussions between OIP and DEA, OIP had decided to release portions of two additional pages, and otherwise it was affirming DEA's response, informing the plaintiff that DEA correctly withheld information pursuant to FOIA exemptions (b)(2), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(F). A copy of the OIP letter dated August 10, 2004, is attached as Exhibit I.

20. By letter dated September 7, 2004, DEA released portions of two pages, pages 122 and 159. Information was withheld pursuant to the exemptions cited in DEA's original determination letter. A copy of the DEA letter dated September 7, 2004, is attached as Exhibit J.

## DEA FOIA REQUEST 03-0307-P

21. By undated letter notarized July 24, 2002, addressed to the DEA Fayetteville, Arkansas, Residence Office, the plaintiff requested, as follows:

(a). Affidavit for arrest warrant;

(b). Affidavit for search warrant;

(c). Affidavit for the order to intercept wire communications over mobile phone 501-466-8684, and residential phone 501-621-7029;

(d). Arrest warrant;

(e). Search warrant;

(f). The order that was signed by the Honorable Jimm Larry Hendren on June 19, 1998. (sic) Authorizing the interception of wire communications over mobile phone 501-466-8684, and residential phone 501-621-7029;

(g). The D.E.A. investigative report filed by Special Agent Sal Scalia on March 5, 1999, with reference to related case defendant, Thomas Hornbecker;

(h). The report Sergeant Yates completed in reference to his interview with Crystal Mendoza on October 12, 1998. (sic) That was Forwarded to this agency or to Special Agent Marty Chitwood;

(i). Any statement of the people that were arrested or interviewed in relation to myself or related offenses;

(j). Investigation and/or investigatory reports;

(k). Reports or evidentiary and scientific information finding;

(l). Transcripts of all recorded calls; and,

(m). Final and closing investigation reports.

The plaintiff also requested a fee waiver, stating that, if the fee waiver was denied, he agreed to pay the search and duplication fees while retaining his right to appeal the denial. A copy of the plaintiff's letter dated July 24, 2002, is attached as Exhibit K.

22. The plaintiff's letter dated July 24, 2002, was forwarded to the DEA Freedom of Information and Records Management Section by the Laboratory Director of the South Central Laboratory. DEA Mmemorandum dated August 1, 2002. A copy of the DEA memorandum ter dated August 1, 2002, is attached as Exhibit L.

23. By letter dated December 9, 2002, DEA informed the plaintiff that it had received his request and that it would be handled in approximate order of receipt. In the letter, DEA also informed the plaintiff that, by filing his request, he had agreed to pay fees up to $25.00, unless he sought a waiver of fees. A copy of the DEA letter dated December 9, 2002, is attached as Exhibit M.

24. By letter dated January 28, 2003, DEA denied the plaintiff's request for a fee waiver, informing him that the event he submitted a promise to pay, processing of the request would commence upon receipt of his letter. A copy of the DEA letter dated December 9, 2002, is attached as Exhibit N.

25. By letter addressed to DEA and dated February 7, 2003, the plaintiff stated that he would like to pay the fee so that his request could be processed. He stated that he still wished to appeal the fee waiver denial. A copy of the plaintiff's letter dated January 28, 2003, is attached as Exhibit O.

26. By letter dated March 21, 2003, the plaintiff appealed the DEA denial of his fee waiver to OIP. A copy of the plaintiff's letter dated March 21, 2003, is attached as Exhibit P.

27. By letter dated April 14, 2003, OIP acknowledged the plaintiff's appeal, assigning it appeal number 03-0307-P, and informing him that it would be handled in approximate order of receipt. A copy of the OIP letter dated April 14, 2003, is attached as Exhibit Q.

28. By letter dated July 31, 2003, DEA addressed the plaintiff's request. DEA stated that with regards to items 1 through 6, it did not house those types of records within its system of records.

that those documents are located in the U.S. Attorney's Office, and that he should direct his request for those items to the appropriate U.S. Attorney's Office. DEA stated that Items 7 through 13 were duplicative of his original request letter to DEA and his appeal letter to OIP. DEA stated that the letters and responsive material were maintained under his previous request file 02-0779-P which was under advisement with OIP, and that any additional information may be released upon adjudication of his appeal. A copy of the DEA letter dated July 31, 2003, is attached as Exhibit R.

29. By letter dated August 10, 2004, OIP informed the plaintiff that since DEA had responded to his request by finding no records in response to certain subjects and determining that the remaining subjects were handled under a previous request, the fee issue as it related to request 03-0307-P was moot. OIP stated that therefore it was closing the appeal file. A copy of the OIP letter dated August 10, 2004, is attached as Exhibit S.

30. During the course of the litigation review in May 2006, it was noted that the plaintiff specifically requested: "all reports of the chemical composition of any and all substance that were obtained by your agency through any other agency under my name for laboratory analysis..." There was no indication that a search for laboratory records had been previously conducted.

31. In June 2006, the South Central Laboratory was contacted and the laboratory forwarded copies of the requested laboratory records.

32. By letter dated July 3, 2006, DEA released two (2) pages in their entirety and portions of 21 pages to the plaintiff. Names of DEA laboratory personnel were withheld pursuant to FOIA exemption (b)(7)(C). A copy of the DEA letter dated July 3, 2006, is attached as Exhibit T

## ADEQUACY OF SEARCH

33. Plaintiff's letter dated June 11, 2005, assigned DEA FOIA Request No. 02-0779, was interpreted as seeking criminal investigative and laboratory records that referenced or related to the plaintiff, or referenced by the plaintiff's name. Similarly, the plaintiff's request dated July 24, 2002, was interpreted as a request for criminal investigative information and was considered duplicative of his request dated June 11, 2005.

34. The criminal investigative information sought by the plaintiff was reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS). Records regarding laboratory analysis are reasonably likely to be contained records systems maintained by DEA laboratories.

35. No other records systems maintained by DEA would reasonably likely to contain information requested by the plaintiff.

36. The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS.

37. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

38. Records related to laboratory analysis performed by DEA laboratories are reasonably likely to be found in the DEA Laboratory Case Files.

39. The records maintained by DEA laboratories are the records that were generated as a result of forensic examination which were forwarded by DEA personnel in the course of a criminal investigation, or materials forwarded by other law enforcement agencies for forensic analysis.

40. The laboratory information consists of one DEA Form 86, Forensic Chemist Worksheet, and 12 pages of pertinent and analytical material, such as charts and graphs depicting infrared/spectrographic analyses. Laboratory case files include documents related to the analysis of drug and non-drug evidence, including evidence accountability and disposition records, chemist worksheets, ballistics reports, and related analytical documents.

41. On April 5, 2002, a NADDIS query was conducted by SARO, in response to the plaintiff's request dated January 28, 2002. The search was conducted by a SARO pre-processor, who used the plaintiff's name, Social Security Number, and date of birth.

42. As a result of the NADDIS query 395 pages of material responsive to the plaintiff's requests were identified.

## DESCRIPTION OF RESPONSIVE MATERIAL

43. During the course of the administrative process and the litigation review, a total of 418[1] pages of materials responsive to the plaintiff's request were identified.[2] Of the 418 responsive

---

[1] The pages were numbered 1 through 395. Pursuant to a litigation review, it was discovered that two pages were numbered page 57. The second page 57 was changed to page 57a. There was also no page numbered "388". Thus, with the omission and inclusion of page 57a, the number of responsive pages remains 418.

[2] The 390 pages that were referred by the Executive Office for the United States Attorneys (EOUSA) are not addressed in this action. These 390 pages, however, were reviewed

pages, 31 pages were released to the plaintiff. These 31 pages include, portions of 29 pages and

two (2) pages in their entirety. The remaining 387 pages were withheld in their entirety.

Information was withheld pursuant to FOIA exemptions (b)(2), (b)(3), (b)(7)(A), (b)(7)(C),

(b)(7)(D), (b)(7)(F), and PA exemption (j)(2). A *Vaughn* index detailing DEA's withholdings

has been prepared, and it is attached as Exhibit U.


44. In this case, the 418 pages of responsive information consist of:

> (a) 155  DEA ROIs;
>
> (b) 30  DEA Personal History Reports;
>
> (c) 1 DEA Defendant Disposition Report;
>
> (d) 4  DEA Report of Drug Property Collected, Purchased or Seized forms;
>
> (e) 5 DEA Acquisition of Non-Drug Property and Regulatory Seizures forms;
>
> (f) 1 Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC
>
>     TV Equipment (Non-Telephone)
>
> (g) 3 DEA Forensic Chemist Worksheets, including back page;
>
> (h) 17 pages of laboratory worksheets;
>
> (i) 4 DEA Disposition of Non-Drug Evidence;
>
> (j) 1 DEA Voucher for Payment for Information and Purchase of Evidence
>
> (k) 5 Cables;
>
> (l)  5 memoranda;
>
> (m) 3 Fugitive Cancellation Reports;
>
> (n) 6 Fugitive Declaration Report;
>
> (o) 2 Fugitives Search Results lists; and,
>
> (p) 1 Current Fugitive list.

---

and compared to the materials held by DEA to insure the adequacy of the DEA search and to
avoid duplication of efforts

45. DEA investigative case files are established by the office commencing an investigation. The files are titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened. DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest.

46. Information gathered during the course of a DEA investigation is systematically gathered and included in the investigative case file. This information relates to the case subject and may also include other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the file.

47. IRFS investigative case files generally contain several types of forms and other miscellaneous documents. The forms generally include (a) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a; (b) the DEA Personal History Report, DEA Form 202; DEA Defendant Disposition Report, DEA Form 210; (c) the DEA Form 7, Report of Drug Property Collected, Purchased or Seized; (d) the DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures; (e) the DEA Disposition of Non-Drug Evidence, DEA Form 48a; and, (f) other miscellaneous memoranda and documents such as cables.

48. The DEA Form 6, and form 6a, are multi-block forms that comprise the DEA ROI. The forms are used by DEA to memorialize investigative and intelligence activities, and information. The Form 6 is the initial page of the ROI and consists of 15 numbered blocks. Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom. The middle of the page is the narrative section in which investigative details and information, and intelligence information are recorded.

The Form 6a is the continuation page of the ROI and consists of six (6) numbered blocks appearing at the top followed by the narrative section that extends to the bottom of the page.

49. The Form 6, Block 4, and Form 6a, Block 2, contain a G-DEP identifier. The Form 6, Blocks 5, 9, 12, and 14, contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. The Form 6, Block 6, and Form 6a, Block 3, contains the file title, which is generally the subject of the investigation.

50. The narrative section may be broken into several sections which include a "Synopsis," "Details," "Evidence," "Vehicle Indexing" and/or "Indexing" sections. Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate individuals and entities, by name, that are of investigative interest which the agent or intelligence analyst designates to be listed in NADDIS. In addition to the name of an individual, the indexing section may provide identifying details for the indexed individuals or entity that may include physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations.

51. The DEA Personal History Report, DEA Form 202, is a two-page multi-block form used (1) to identify and classify an individual, or update an earlier identification or classification under G-DEP, either prior to or at the time of the arrest, (2) to declare a defendant a fugitive, (3) as part of the establishment of a cooperating individual and (4) to correct personal data in the NADDIS index. The form consists of 76 blocks that are completed depending on the circumstances. . Block 1 or 4a contains the file title, which is generally the subject of the investigation. Block 2 or 5 contain a G-DEP identifier; blocks 68, 69, 71, 72, 74, and 75 normally contain the names

and/or signatures of DEA Special Agents and other law enforcement personnel. Blocks 8

through 57 contain identifying information about the individual to whom the form pertains.

Blocks 42 through 67 contain information related to and explaining the action being taken.

52.   DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as

the source document for the compilation of DEA defendant statistics, as well as the means by

which DEA and the Federal Bureau of Investigation (FBI)  track individual cases brought against

DEA defendants. A separate form 210 is prepared for each defendant prosecuted as the result of

DEA investigative efforts. The form consists of 25 blocks of which Block 5 contains the G-DEP

identifier; Block 6, the file title; Blocks 7 and 16, the defendant's name; Block 9, the defendant's

NADDIS number; Blocks 16 - 20, personal information and identifiers of the defendant; and,

Blocks 24 and 25, the name and signature of a DEA Special Agent or other law enforcement

officer.

53. The DEA Form 7,  Report of Drug Property Collected, Purchased or Seized,  includes a

description of the alleged drugs seized, the quantity seized, and a laboratory analysis/comparison

report.  The form consists of 39 blocks of which Block 3 contains the G-DEP identifier; Block 5,

the file title; Block 16, the "Remarks," contains descriptive information that may include names

of law enforcement officers and third parties, and other information regarding the seizure; Blocks

17, 18, 20, 21, 23, 24, 34 and 37 contain the names and/or signatures of DEA Special Agents,

other law enforcement personnel or DEA employees.

54. The DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures is used to

report any non-drug property acquired.  DEA uses the DEA-Form 7a to log or maintain a record

of the non-drug property. The form consists of 31 blocks of which Block 4 contains the G-DEP identifier; Block 5, the file title; and Blocks 13 -18, 20, 21, 28 and 30, the names and signature of a DEA Special Agent or other law enforcement officer.

55. The DEA Disposition of Non-Drug Evidence, DEA Form 48a, records the disposition of non-drug evidence. Similar to the DEA 48 and unlike other DEA forms, the blocks are not numbered, but are self explanatory.

56. The DEA Authorization for Use and Report of Use of Consensual Eavesdropping and/or CC TV Equipment (Non-Telephone), DEA Form 248, is a multi-block form used to request, record use and approve non-telephone consensual eavesdropping and surveillance. The form contains three sections that include an introductory and approval section, and Part I and Part II. The introductory section contains a File Number block, a G-DEP Identifier block, a File Title block and an Authorization block. Part I contains 9 numbered blocks and Part II consists of 10 numbered blocks.

57. The Forensic Chemist Worksheet, DEA Form 86, is used to record the description of the evidence item and its packaging, including numerical identification, and recording the information as the items are initially removed from the evidence container. Additionally, this document is used to record actions taken during the analysis of the evidence item. These worksheets are used to record all rew data, observations and calculations and should be written to permit adequate reconstruction of the analysis of examination performed.

58.  Also included in the responsive documents were cables, Fugitive Cancellation Reports, a

Current Fugitives report,  Memoranda, Fugitive Search Results, Current Fugitive documents, and

miscellaneous laboratory worksheets.

59.  Detailed discussions of the basis and justification for invoking the Freedom of Information

Act exemptions for all of the redacted material, are set forth below.  The exemptions utilized by

DEA to withhold material are Privacy Act Exemption (j)(2) and the Freedom of Information Act

Exemptions (b)(2), (b)(3),  (b)(7)(A), (b)(7)(C), (b)(7)(D),  and (b)(7)(F) of 5 U.S.C. § 552.

## APPLICATION OF PRIVACY ACT EXEMPTION (j)(2)

60.  DEA is component of the Department of Justice whose primary responsibility is the

enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and

chemicals, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et*

*seq*.  See 28 C.F.R. § 0.100.

61.  IRFS is a Privacy Act System of Records that was last reported at 66 Fed. Reg. 8425 and last

published in its entirety at 61 Fed. Reg. 54219.  In accordance with the Privacy Act, rules were

promulgated, pursuant to 5 U.S.C. §552a(j)(2), to exempt records contained in IRFS from access.

28 C.F.R. §16.98(c)(3).

62.  In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request

by, or with prior written consent of, the individual to whom the record pertains, unless disclosure

of the record is required by the FOIA, for a routine use or  pursuant to the order of a court of

competent jurisdiction, information was withheld by DEA.  No routine use existed for and the

plaintiff did not provide a release authorization or proof of death for the release of any third party information, and no court order has been received by DEA. Thus, the release of information is only that which is required by the FOIA.

## WITHHOLDING PURSUANT TO FOIA EXEMPTION (b)(2)

63. 5 U.S.C. § 552 (b)(2) exempts from disclosure information relating to the internal rules and practices of any agency.

64. Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, most of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and confidential informant numbers.. The G-DEP, NADDIS, and confidential informant numbers are part of DEA's internal system of identifying information and individuals.

(a). G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.

(b). NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA. Each number is unique and is assigned to only one violator within the DEA NADDIS indices. (The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98 (2005). Knowledge of the NADDIS number provides a means of finding out not only drug violator information about the subject but also personal information about himself, relatives and any third parties identifiable with the violator. Thus, Exemption (b)(7)(C) was used in conjunction with (b)(2) to withhold third- party NADDIS numbers.

(c). Informant identifier codes are assigned to DEA and other law enforcement agency cooperating individuals and are used instead of their names in all DEA reports, memoranda and other internal correspondence. Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out its law enforcement functions. Exemptions (b)(7)C), (b)(7)(D) and (b)(7)(F) were used in conjunction with (b)(2) to withhold these identities.

65. The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings. Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension create alibis for suspected activities. Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts.

66. NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies. They are assigned by DEA for internal use and there is no public interest in the release of these codes.

## INFORMATION SPECIFICALLY EXEMPTED BY STATUTE PURSUANT TO FOIA EXEMPTION (b)(3)

67. Title 5, U.S.C. 552 (b)(3) sets forth an exemption for those documents that contain information specifically exempted by statute. Title 18, U.S.C. § 2517 of the Federal Rules of Criminal Procedure, Title III, prohibits the disclosure of information obtained from the use of a court approved wiretap. Pages 31, 32, 160, 165, 270, 253-254 and 262 of the withheld pages

concern the wiretaps approved by the Federal court during the investigation of the plaintiff's criminal organization.

## RECORDS OR INFORMATION COMPILED FOR LAW ENFORCEMENT PURPOSES

### EXEMPTION (b)(7) THRESHOLD

68. DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, et seq. (hereinafter, the Act) which authorizes DEA to enforce the Act through the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control.

69. The records deemed responsive to the plaintiff's FOIA request are criminal investigative records. The records were compiled during criminal law enforcement investigations of the plaintiff and several third parties.

### Exemption (b)(7)(A) - Interference with Enforcement Proceedings

70. 5 U.S.C. § 552 (b)(7)(A) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to interfere with enforcement proceedings. The DEA investigation in which information about the plaintiff is maintained is an open investigation.

71. The investigation remains open, since there are indicted individuals who are fugitives and others who are of investigative interest to DEA. All of the responsive pages, except 73 - 81, 122, 159 and 395 - 418 were withheld in their entirety pursuant to exemption (b)(7)(A). The information relates to the criminal activity of the plaintiff, the plaintiff's criminal associates and third-parties. If released, potential witnesses and information against the individuals who are indicted fugitives and other, would assist them in avoiding apprehension, allow them to develop alibis, create factitious defenses or intimidate, harass or harm potential witness. Thus, release of any information could interfere with the ongoing investigation and eventual criminal proceedings.

72. The documents processed by DEA were a DEA 210, Defendant Disposition Report; two (2) DEA 202s, Personal History Reports, and a DEA 6, Report of Investigation (ROI) that included the details of the plaintiff's arrest, and the laboratory results of DEA Investigation No. KY-97-0069, Drug Exhibit 4. These documents were particular to the plaintiff for which the release would not interfere with an ongoing criminal investigation or enforcement proceeding.

## Exemption (b)(7)(C) - Invasion of Privacy

73. 5 U.S.C. § 552 (b)(7)(C) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Many of the documents in the investigative case file contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the plaintiff. The individuals, which include third-parties, suspects, criminal associates, non-implicated

individuals, and law enforcement officers and support personnel, are protected from the disclosure of their identities.

74. In making the determination to withhold this information, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. In this instance, the plaintiff provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.

75. In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.

76. The identities of DEA Special Agents, and other Federal, state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file.

-21-

77. The Special Agents and other law enforcement officers were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of DEA agents.

78. The identities of government employees, including DEA and FBI Special Agents, and a DEA non-drug evidence custodian were withheld. Releasing their identities and information pertaining to these individuals would place them in such a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in a criminal law enforcement investigatory file.

79. Government employees were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Also, release of their identities would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of government employees.

## Confidential Sources and Information Obtained from Confidential Sources - Exemption (b)(7)(D)

80.  The FOIA, 5 U.S.C. § 552 (b)(7)(D) sets forth an exemption for the information compiled for law enforcement purposes the disclosure of which could reasonably be expected to reveal the identity of a confidential source and/or information furnished by a confidential source.

### Express Confidentiality - Coded Informants

81. Coded informants are individuals who have a continuing cooperative association with DEA. These individuals are expressly assured confidentiality in their identities and the information they provide to DEA.  They are also assured that their names will not be used in DEA investigative materials.  They are assigned an identification code which is used in place of their name or referred to as CI.

82.  Pages "92" and "93" comprise a two page ROI containing personal information about a coded informant.  The plaintiff's name is mentioned on the pages only as the file title.

83.  Pages "113" and "114" comprise a two page ROI containing a debriefing of a coded informant, who provided information about the drug trafficking activities of himself/herself and third parties.  The plaintiff's name is mentioned on the pages only as the file title.

84.  Pages "369" and "370" comprise a two page cable containing information about a coded informant.  The plaintiff's name appears only in the subject line on page "369."

## Sources with Implied Confidentiality

85.  When it cannot be ascertained that a source was found to have been expressly made a promise of confidentiality, certain circumstances characteristically may support an inference of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime.

86.  The plaintiff was convicted of conspiracy to distribute methamphetamine.  Nine firearms were seized from the plaintiff at the time of his arrest.  It is reasonable to infer that the individuals who provided information about the plaintiff would fear for their safety, since violence is inherent in the trade in illicit substances such as methamphetamine, if their identities or the information they provided was revealed.  Additionally, release of the name of the sources could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals could be needed in future criminal investigations.

87.  Page "73" is the second page of the plaintiff's DEA 202.  The page contains information from a 19th Judicial Drug Task Force about the drug trafficking activities of himself/herself and the plaintiff.

88. Pages "83" and "84" comprise a two page ROI containing an interview of a named confidential source, who provided information about the drug trafficking activities of himself/herself, the plaintiff, and third parties.  The plaintiff's name is listed only as the file title and in the Indexing Section on page "84."

89. Page "87" is a one page ROI containing intelligence regarding a third party. The page contains information from a named confidential source about the activities of a third party. The plaintiff's name is mentioned on the page only as the file title.

90. Page "89" is a one page ROI containing intelligence regarding third parties. The page contains information from a named confidential source about the drug trafficking and other activities of third parties. The plaintiff's name is mentioned on the page only as the file title.

91. Pages "100" through "103" comprise a four page ROI containing an interview with a named confidential source, who provided information about his/her drug trafficking interaction with the plaintiff and third parties. Information about the plaintiff is found throughout the document.

92. Pages "104" and "105" comprise a two page ROI containing an interview with a named confidential source, who provided information about his/her drug trafficking interaction with third parties. The plaintiff's name is listed only as the file title on each page.

93. Pages "108" through "110" comprise the first three pages of a four page ROI containing an interview with a named confidential source, who provided information about his/her drug trafficking interaction with the plaintiff and third parties. Information about the plaintiff is found throughout the document.

94. Pages "194" and "195" comprise a two page ROI containing an interview with a named confidential source, who provided information about his/her drug trafficking interaction with third parties. The plaintiff's name is listed only as the file title on each page.

95. Page "196" is a one page ROI containing an interview of a named confidential source about the drug trafficking activities of third parties. The plaintiff's name is mentioned on the page only as the file title.  Page "197" is a duplicate of page "196."

96. Page "227" is a one page ROI containing an interview of a named confidential source about the  activities of third parties. The plaintiff's name is mentioned on the page only as the file title.

97. Pages "350" and "351" comprise the first two pages of a three page ROI describing the acquisition of a state item.  The page contains information about the drug trafficking interaction between a confidential source and the plaintiff.

98.  Page "353" and "354" comprise the first two pages of a three page ROI describing the acquisition of a state item.  The page contains information about the drug trafficking interaction between a confidential source and the plaintiff.

99. Page "356" is the first two page of a two age ROI describing the acquisition of a state item. The page contains information about the drug trafficking interaction between a 19th Judicial Task Force  confidential source and the plaintiff.

100.  Page "358" and "359" comprise a two page ROI describing the acquisition of a state item. The page contains information about the drug trafficking interaction between a 19th Judicial Task Force confidential source and the plaintiff.

101. Page "360" is the first page of a two page ROI containing the case initiation of the plaintiff's investigation.  The page contains information from a 19th Judicial Task Force about the drug trafficking activities of the plaintiff.

## SAFETY OF LAW ENFORCEMENT PERSONNEL AND OTHER INDIVIDUALS
### Exemption (b)(7)(F)

102.  The names of DEA Special Agents, Supervisory Special Agents, Federal Bureau of

Investigation (FBI) Special Agents, a DEA Task Force officer, a Deputy United States Marshal,

and state/local law enforcement officers were withheld in accordance with 5 U.S.C. § 552

(b)(7)(F).  Exemption (b)(7)(F) sets forth an exemption for records or information compiled for

law enforcement purposes the disclosure of which could reasonably be expected to endanger the

life or physical safety of an individual.

103.  DEA Special Agents and Supervisory Special Agents, as well as members of other law

enforcement entities, are frequently called upon to conduct a wide variety of investigations,

including sensitive and dangerous undercover operations.

104.  Special Agents routinely approach and associate with violators in a covert capacity.  Many

of those violators are armed and many have known violent tendencies.  It has been the experience

of DEA that the release of Special Agents' identities has, in the past, resulted in several instances

of physical attacks, threats, harassment and attempted murder of undercover and other DEA

Special Agents.  It may, therefore, be reasonably anticipated that other law enforcement officers

would become targets of similar abuse if they were identified as participants in DEA's

enforcement operations.

105.  In addition, if the names of Special Agents and other law enforcement officers were

released pursuant to the Freedom of Information Act, DEA would be releasing this data to the

public realm.  DEA considers it to be within the public interest not to disclose the identity of

Special Agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs. Public disclosure of the identities of investigatory personnel would have a detrimental effect on the successful operation of DEA, as well as risk harassment and danger to its agents and other law enforcement personnel. This information was also withheld pursuant to Exemption (b)(7)(C).

## SEGREGABILITY[3]

106. Pages 1 through 72, 79 through 121, 123 through 158, and 160 through 394, withheld in their entirety pursuant to FOIA Exemption (b)(7)(A), were examined to determine whether any reasonably segregable information could be released. After information is withheld pursuant to FOIA Exemptions (b)(2), (b)(3), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(F), only blank pages, pages with only the plaintiff's name and identifying information, the investigative file number

---

[3]Reasonably segregable also involved consideration of the time and effort that would be expended to exclude or include information in a record or document being processed. The current redaction process employed by DEA entails the use of translucent red cellophane tape. After the tape is applied, the document is copied and the information intended to be withheld is blackened in the copying process. Once tape is applied, it generally cannot be removed. The tape lifts the print from the paper, if removal is attempted or if it inadvertently touches print not intended to be withheld. The page must then be recopied and the process begun again. The process of applying a thin strip of tape is tedious, cumbersome and time consuming; however, it is the most effective and efficient means currently available to DEA to withhold information based upon the manner and methods in which DEA records information and maintains its records. Consequently, the importance of releasing a particular word, when an error occurs, is balanced against the cost of redoing an entire page. In making the determination to redo a page or pages, consideration is given as to whether the information which could be released will add any value in disclosing or shedding light on how the Government conducts business. Thus, although an additional word could be released, or the same word is withheld in one instance and not in another, a balance is struck between the cost of re-processing the entire page and the value of the word or phrase that could be released.

and/or pages with incomprehensible words and phrases would remain. The release of that information would not contribute to the understanding of how DEA or how the Governments conducts business. Thus, the pages were withheld in their entirety.

107. Of the pages to which (b)(7)(A) does not apply, which includes 73 - 78, 122, 159 and 395 - 418, pages 74 and 81, withheld in their entirety, were examined to determine whether any reasonably segregable information could be released.

108. Page "74" is the second page of the plaintiff's DEA 202. The page is withheld in its entirety pursuant to FOIA exemptions (b)(7)(C), (b)(7)(D), (b)(7)(F). The page contains information from a 19th Judicial Task Force confidential source regarding the drug trafficking activities of the plaintiff and other third-parties. Information about the plaintiff is inextricably intertwined with information about the confidential source and the third-parties. the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (2) could result in compromising the identity of and information provided by sources of information who were granted express confidentiality or, because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel. Information about the plaintiff was inexorably intertwined with information about third-parties.

109. Page "81" is the fifth page of a five page ROI describing the execution of a federal search warrant. The page is withheld in its entirety pursuant to FOIA exemptions (b)(2) and (b)(7)(C). The page contains only the latter portion of the Indexing Section. The plaintiff's name is mentioned only as the file title.

I declare under the penalty of perjury that the foregoing is true and correct.

July 28, 2006
DATE

William C. Little, Jr., Senior Attorney
Office of Chief Counsel
Administrative Law Section
Drug Enforcement Administration
Washington, D.C.  20537